EARNEST MONDAY v. THE STATE.

No. 15804. Delivered June 7, 1933.
Reported in 61 S. W. (2d) 97.

The opinion states the case.

*J. Benton Morgan* and *L. D. Hartwell*, both of Greenville, for appellant.

*Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—The unlawful sale of intoxicating liquor is the offense; penalty assessed at confinement in the penitentiary for one year.

From the state's testimony, it appears that Jack Hall called the appellant over the telephone and ordered a quart of good whisky. Appellant said it was good whisky, fixed the price, agreed to deliver the whisky, and did so, receiving pay from Hall. Upon cross-examination, Hall was asked questions touching his state of health at the time. In answer to these questions, Hall stated that in January he was under the treatment of Dr. Allen for nervous trouble. He denied that Dr. Allen had advised the use of whisky for nervous trouble. Hall was asked, if on the morning on which he received the whisky, he met Monday and Enos Steed near the postoffice about nine o'clock and told Monday, in the presence of Steed, that his nerves were "shot to pieces"; that he had had some teeth pulled and had to have some whisky and asked Monday to get some for him. Hall denied the conversation. He was also asked the following question: "I will ask you if when you came before the grand jury when they asked you about this matter if the first thing you told them your nerves were torn up and you had your teeth extracted and you were using this whisky for medical purposes."

Hall answered that he did not remember that. He was also asked if he did not later change his statement, to which he replied that he did not remember; that he would not say positively that he did not make that statement before the grand jury. He admitted that he was brought back before the grand jury at that term but did not tell the grand jury that he bought the whisky for medicinal purposes, but so told Monday at the time. On redirect examination Hall testified that he had talked to Monday a time or two during the term of court at which the

trial took place; that Monday talked to him after the indictment was returned. From the testimony we quote: "He (Monday) just merely suggested what he was going to do about it and the only thing I remember about it, I told him it was up to his attorneys; I wasn't going to do nothing but swear the truth about it and couldn't. He just said sometimes a fellow could take a vacation, or something like that."

On recross-examination Hall testified that Monday had never asked him to tell anything but the truth.

Enos Steed testified that he and Monday were in company with each other about the first of February, 1932, and saw Joe Hall about the Acker Hotel building near the postoffice about 11:30 o'clock in the morning. Hall called Monday and said he wanted to talk to him. He told Monday that he was sick and wanted to know if he could get some liquor. Monday told Hall he did not have any but that he would try to get some for him. Monday went to the postoffice while Steed remained and talked to Hall, who said he was sick; that he had had some teeth pulled and the doctor told him to get some whisky and drink it; that it would be good for him. Steed also testified that he later saw Hall and was told by him that he had bought some whisky from Earnest Monday for medicinal purposes; that it was doing him some good.

Dr. Allen testified that he had been treating Hall; that he visited him in February, 1932; that he had been doing his practice for a number of years; that Hall was suffering in February with gastritis, gall bladder trouble, and extreme nervousness. The doctor said that whisky was sometimes used for the condition described. The witness did not recall prescribing whisky for Hall as he did not write whisky prescriptions.

Dr. Smith testified that from July on until February and after, he had treated Hall for his teeth; that he had extracted some teeth in January; that it was customary for him to tell his patients after extracting teeth to wash their mouths with salt water and then drink whisky or anything stimulating for their nerves. The witness was not a doctor of medicine but a dentist, and had no license to prescribe whisky.

Hall was recalled and denied the purported conservation with Monday and Steed. He also denied having any conversation with Steed alone. He admitted that Dr. Smith had recommended the use of whisky after extracting his teeth. Hall also testified that prior to ordering the whisky over the telephone, he had not talked with Monday on the subject.

There are a number of bills of exception addressed to the rulings of the court in passing upon the items of evidence

160

which have been mentioned above. The defendant having gone into the question of the conversation between Enos Steed and Hall, it was clearly admissible for the state to give its version of the same conversation. The same principle of law supports the action of the trial court in receiving the testimony of Hall explanatory of his action before the grand jury. We think the procedure is in accord with the statutory declaration contained in article 728, C. C. P., 1925, in which it is held in substance that when part of a conversation is introduced in evidence by one party, the remainder of the same conversation is rendered admissible to the opposing party. Many illustrations of the interpretation and application of the statute mentioned will be found in Vernon's Ann. Tex. C. C. P., vol. 2, p. 836. Among the cases are Cotton v. State, 86 Texas Crim. Rep., 387; Young v. State, 87 Texas Crim. Rep., 27; Flores v. State, 88 Texas Crim. Rep., 349.

Enos Steed testified that he was present at the time the appellant was arrested for the present offense. He was permitted, over the appellant's objection, to testify in answer to a question propounded by state's counsel that at the time of such arrest, Earnest Monday's father and Judge Hartwell were present. Objection was made that the testimony was immaterial. Its materiality is not perceived, nor are we able to discern how it could have been hurtful to the appellant.

Our examination of the record, including all the bills of exception and the statement of facts, leads us to the conclusion that the proper disposition of the case is to order an affirmance of the judgment, which is accordingly done.

*Affirmed.*